## ARMIN R. GAREIS, BY CARMION GAREIS, HIS GUARDIAN AD LITEM, v. BENEFIT ASSOCIATION OF RAILWAY EMPLOYEES.

169 N. W. (2d) 730.

August 1, 1969—No. 41635.

*Sheridan J. Buckley, Jr.,* for appellant.

*Douglass, Bell & Donlin, James R. Bell,* and *Thomas J. Lyons,* for respondent.

Heard before Knutson, C. J., and Otis, Rogosheske, Sheran, and Peterson, JJ.

SHERAN, JUSTICE.

Appeal from a judgment of the district court.

In an action instituted to recover benefits for a confining disability under a health and accident policy, the trial court, confirming answers to special interrogatories submitted to a jury, entered findings of fact and conclusions of law on the basis of which the judgment for the insured was ordered and entered.

Upon appeal, the issues are these:

(1) Is a disease which damages the central nervous system through deterioration of brain cells, thereby resulting in loss of memory, and which may ultimately result in impairment of the ability to perform such bodily functions as speaking, swallowing, and walking, a "mental disorder" within the meaning of a policy of health and accident insurance which limits benefits payable for disability by a provision reading as follows:

"This policy does not cover * * * any loss * * * resulting from * * * (6) mental disorders or rest cure * * * ."

(2) Does the evidence support a finding that the disease suffered by the insured was a confining sickness within the meaning of this provision of the policy:

"If sickness confines the Insured continuously within doors for one day or more and requires regular visits therein by a legally qualified physician or surgeon, other than himself, the Association will pay, commencing with the first such visit, benefits at the rate of the Regular Monthly Benefit so long as such confinement remains continuous and causes total disability and necessitates total loss of time."

■ The question of whether the illness from which the insured was suffering was a "mental disorder" was submitted to the jury by a special interrogatory. The jury found, and the trial court confirmed, that it was not. While the construction of the

meaning of the language of insurance policies does not rest within the competence of juries except in a limited class of cases,[1] we have concluded that the resolution of this aspect of the matter was correct.

The term "mental disorder" as used in the policy is ambiguous in the sense that it could refer either to mental abnormalities resulting from physiological causes or from emotional imbalance, or both. According to the testimony in this case, a "mental disorder," in medical terminology, may be either organic or functional. But the meaning of the term medically is not necessarily the meaning assigned to this language by common usage.[2] It is the meaning ordinarily conveyed to the popular mind that controls in construing the language of policies of insurance made available to the general public.[3] We believe it is as likely as not that people would consider "mental disorder" refers only to a situation where an individual's mental functions are abnormal due to causes which cannot be explained in terms of physiological changes attributable to disease.[4]

In Mutual Benefit Health & Acc. Assn. v. Rowell, 236 Ark. 771, 776, 368 S. W. (2d) 272, 275, 98 A. L. R. (2d) 277, 281, the policy provided that sickness should not include mental infirmity. The court said:

"* * * [T]he jury could well have concluded—as we do—that hardening of the arteries is a physical infirmity, since some of

---

[1]See, Transport Ind. Co. v. Dahlen Transport, Inc. 281 Minn. 253, 161 N. W. (2d) 546; Honeymead Products Co. v. Aetna Cas. & Surety Co. 275 Minn. 182, 146 N. W. (2d) 522.

[2]See, Commercial Travelers Mutual Acc. Assn. v. Kilgore (Fla. App.) 201 So. (2d) 486; Seguin v. Continental Serv. Life & Health Ins. Co. 230 La. 533, 89 So. (2d) 113, 55 A. L. R. (2d) 1014; Ames v. Baker, 68 Wash. (2d) 713, 415 P. (2d) 74; 13 Appleman, Insurance Law and Practice, § 7384.

[3]See, LeRoux v. Edmundson, 276 Minn. 120, 148 N. W. (2d) 812; Greenlee v. Drees, 274 Minn. 538, 144 N. W. (2d) 774; Tomlyanovich v. Tomlyanovich, 239 Minn. 250, 58 N. W. (2d) 855, 50 A. L. R. (2d) 108.

[4]See, Mutual Benefit Health & Acc. Assn. v. Rowell, 236 Ark. 771, 368 S. W. (2d) 272; Annotation, 98 A. L. R. (2d) 284.

the arteries are a part of the physical body; that when the arteries in the brain harden and a mental atrophy resulted it was the result of a physical infirmity and not a mental infirmity."

In the absence of evidence clarifying this ambiguity, it should be resolved in favor of the insured, the insurer having chosen the language of the policy and being the one best able to make clear the meaning of the words used.[5] Upon this principle, we believe that the trial court's determination that the disease suffered by the insured was not a "mental disorder" within the meaning of the policy, even though this disease produced neurological changes resulting in loss of memory, was right as a matter of law.

■ The finding of the trial court that the disease was a confining sickness within the meaning of the policy is justified by the evidence. Our commitment to a liberal construction of this language has been established by such recent Minnesota cases as Kluge v. Benefit Assn. of Ry. Employees, 276 Minn. 263, 149 N. W. (2d) 681.[6] We are satisfied from the record that defendant was unable to manage himself outside of the confines of his home. To the extent that he went out of the house occasionally, it was upon the initiative and insistence of others and then only when accompanied and aided by them. The reason he was taken out of his home from time to time was to retard the progress of the disease as much as possible. The medical attention he received was regular in the sense that it was afforded to the extent needed to make him as comfortable as possible in a medically hopeless situation.

Affirmed.

---

[5]See, MacRunnel v. Northland Ins. Co. 278 Minn. 286, 153 N. W. (2d) 686; LeRoux v. Edmundson, *supra;* Simon v. Milwaukee Auto. Mutual Ins. Co. 262 Minn. 378, 115 N. W. (2d) 40; Tomlyanovich v. Tomlyanovich, *supra.*

[6]See, also, Benson v. Continental Cas. Co. 275 Minn. 544, 146 N. W. (2d) 358; Struble v. Occidental Life Ins. Co. 265 Minn. 26, 120 N. W. (2d) 609; Annotation, 29 A. L. R. (2d) 1408.